# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TINA KERLIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 6598 |
| | ) | |
| v. | ) | Magistrate Judge Cole |
| | ) | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Tina Kerlin, seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("Agency") denying her application for Disability Insurance Benefits under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 423(d)(2).[1] Ms. Kerlin asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

### I.

### INTRODUCTION

Ms. Kerlin applied for DIB and Supplemental Security Income in June or 2009 (Administrative Record ("R."), at 138-44). She claimed she had been disabled January 1, 2009, due to numbness in her feet, pinched nerve in her back, and arthritis in her hands. (R. 159). A few months later, she added: anxiety, panic attacks, fear of people, and diabetes. (R. 167). Her

---

[1] According to the record in this case, Ms. Kerlin also sought Supplemental Security Income under under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A) (Administrative Record, at 18, 142), but there is no mention of that in her brief. [Dkt. # 18, at 1]. In any case, the issue remains whether she is disabled under the Act.

application was denied initially and upon reconsideration. (R. 70-73, 76-80, 83-90). Ms. Kerlin then filed a timely request for a hearing before an administrative law judge. (R. 93-95).

An ALJ convened a hearing on February 17, 2011. (R. 38-69). Ms. Kerlin, represented by counsel, appeared and testified, and Cheryl Hoiseth testified as vocational expert. On March 9, 2011, the ALJ denied Ms. Kerlin's application for benefits because he determined she retained the capacity to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday with normal breaks; sit about 6 hours of an eight-hour workday with normal breaks; occasionally stoop, kneel, crouch, or crawl. She could not work at heights, climb ladders, or frequently negotiate stairs, and must avoid concentrated exposure to fumes, odors, gases, dust, poorly ventilated areas; moving or dangerous machinery. She was unable to understand, remember, or carry out detailed and complex instructions; was not suited for work that required intense focus and concentration for extended periods of time; could not tolerate more than occasional public with the general public. She would also have some difficulty accepting instructions and responding appropriately to criticism from supervisors. (R. 30). The ALJ concluded that this limited capacity nevertheless allowed Ms. Kerlin to perform her past work as a housekeeper, meaning she was not disabled under the Act. (R. 32). This became the final decision of the Commissioner when the Appeals Council denied Ms. Mason's request for review of the decision on July 18, 2013. (R. 1-6). *See* 20 C.F.R. §§ 404.955; 404.981. Ms. Kerlin has appealed that decision to the federal district court under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II.

## STANDARD OF REVIEW

The applicable standard of review of the Commissioner's decision is a familiar one. The court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the ALJ. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Berger*, 516 F.3d at 544. Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, (7th Cir. 2008); *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). While the standard of review is deferential, the court cannot act as a mere "rubber stamp" for the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). An ALJ is required to "minimally articulate" the reasons for his decision. *Berger*, 516 F.3d at 544; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Although the ALJ need not provide a written evaluation of every piece of evidence and testimony, *Pepper v. Colvin* 712 F.3d 351, 362 (7th Cir.2013); *Dixon*, 270 F.3d at 1176, she cannot limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ's decision must allow the court to assess the validity of his findings and afford the claimant a meaningful judicial review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). That

is, the ALJ must "provide some glimpse into her reasoning." *Dixon,* 270 F.3d at 1176. The Seventh Circuit calls this building a "logical bridge" between the evidence and the ALJ's conclusion. *Id.*; *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

### III.

Ms. Kerlin was born on March 27, 1967, making her nearly 44 years old at the time of the ALJ's decision. (R. 155). She is 5'2" and weighs 185 pounds. (R. 158). She has an eighth-grade education. (R. 164). From 1990 to 2004, she worked as a cashier at a grocery store. For another five years after that until 2009, she was self-employed, working cleaning houses. (R. 160). The cashier job required her to lift up to 20 pounds and stand nearly the whole day. (R. 160). Her housekeeping work was more physically demanding. She was on her feet all day and had to lift as much as 50 pounds. (R. 179).

The ALJ found that Ms. Kerlin suffered from a number of severe impairments. She had type II diabetes mellitus. (R. 20). The medical record indicates that she struggled somewhat keeping this under control. (R. 346, 375, 552). She also had asthma, degenerative arthritis in her right knee – along with mild narrowing of the medial compartment, a back disorder with narrowing at L4-5 and degenerative changes in the lumbar and thoracic spine, obesity, an anxiety disorder, depressive disorder, panic disorder, and poly-substance abuse. (R. 20). Ms. Kerlin tried to keep this constellation of complaints in check with a veritable pharmacy of prescribed medications, including: Actos, Glipizide, Novalog (diabetes), Advair, Fluticasone, Singulair (asthma), Alprazolam (anxiety), Budeprion, Fluoxitine (depression), Crestor (high cholesterol), and Hydrocodone (pain). (R. 163-64, 169-70).

# IV.

# ANALYSIS

Ms. Kerlin's main problem with the ALJ's decision is the ALJ's failure to account for her drowsiness and need to take daily naps in his residual functional capacity ("RFC") determination. Ms. Kerlin contends that the ALJ had to provide an analysis of this problem and take it into consideration when he determined what her RFC was. He also ought to have included the need to lie down during the day in his hypothetical to the VE.

Ms. Kerlin testified that she sometimes took a nap during the day if she had difficulty sleeping at night. (R. 48). She said she spent most of her time in her bedroom lying in bed. (R. 51). She also said that her medication – Seroquel and Xanax – made her drowsy. (R. 49, 54). The Seroquel gave her restless legs at night, and she couldn't sleep. (R. 60).

Ms. Kerlin also mentioned the problem to her doctors. On February 12, 2009, she told Dr. Marilyn Aden that she had trouble sleeping at night. She got a "burst of energy around 10 p.m. and stayed up watching TV until 1 a.m., went to sleep but woke after an hour. She occasionally napped from 6-7 p.m. (R. 346, 427). She was still working at cleaning houses at this time and was trying to get work as a census taker. (R. 346, 427).

On August 12th, Ms. Kerlin reported to psychiatrist Dr. Fred Ross that she was having "significant insomnia, although she is sleeping during the day." (R. 358). But on August 28th, she told the doctor that she was sleeping well with Trazadone. (R. 478). On September 8, 2009, she told the consultative psychologist that she had trouble falling asleep because her mind wandered. (R. 365). She noted that she napped during the day. (R. 366). On September 11th, Ms. Kerlin said she stopped taking her Trazadone in the evening because it caused worse insomnia. (R. 478). On

5

November 9th, she told her doctor she had "restless legs," but it was not too bad. (R. 573).

On December 15, 2009, Ms. Kerlin told her doctor she was feeling good and had slept well. (R. 477). On January 12, 2010, she reported she was sleeping well with a higher dose of Seroquel. (R. 476). The next time Ms. Kerlin reported any difficulty sleeping was in March of 2010, when she said she had trouble for a week. (R. 575). On June 29, 2010, she said she was getting "restless legs" from her Seroquel, but was sleeping "pretty good." (R. 574).

The ALJ mentioned Ms. Kerlin's sleep problems, but only briefly. He noted "Dr. Ross's treatment notes reflect the claimant is sleeping better and has some overall improvement in her mood." (R. 22). But the ALJ went no further than that and did not discuss whether he believed she had to nap during the day or believed she was drowsy all day. That's a problem in the Seventh Circuit where the ALJ must provide a logical bridge between the evidence and his conclusion. If he doesn't, his decision cannot be affirmed even where it is supported by substantial evidence as required by 42 USC §405(g). *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). (". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").[2]

---

[2] But the comparison is perhaps not a perfect one. *See In re Sulfuric Acid Antitrust Litigation*, 703 F.3d 1004, 1008 (7th Cir. 2012)(Posner, J.)(affirming district court ruling although it "was abrupt and not explained"); *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010)("We may affirm the district court's grant of summary judgment for any reason supported by the record."); *Vargas-Harrison v. Racine Unified School Dist.*, 272 F.3d 964, 974 (7th Cir. 2001)("We are not bound by the rationale underlying the district court's determination. Rather, we may affirm the district court's judgment "on any ground that is supported in the record.").

From a commonsense point of view, it's clear that the ALJ didn't believe Ms. Kerlin was so fatigued that she had to sleep during the day every day.[3] That's apparent from his RFC. But under the logical bridge line of cases, he had to explain *why* he didn't believe her. The ALJ's credibility assessment cannot be implied. Mentioning a couple of reports where she said she had slept well at night is not enough.

In *Myles v. Astrue*, 582 F.3d 672 (7th Cir. 2009), the ALJ acknowledged the claimant's complaints of fatigue, but the court remanded the case because "his analysis d[id] not articulate his reasons for rejecting them, except to say there [wa]s no objective medical evidence to support them." 582 F.3d at 677. Similarly, in *Schomas v. Colvin*, 732 F.3d 702 (7th Cir. 2013), the claimant alleged that he was tired and groggy and had to nap during the day. The ALJ didn't evaluate these complaints, and the court explained that "[i]f the ALJ disbelieved [the claimant], he needed to explain that finding in order to build a logical bridge between the evidence and his conclusion." 732 F.3d at 709.[4]

Essentially, the ALJ did the same thing here: he noted some complaints and rejected them – and not even explicitly as the ALJ in *Myles* did – based on a couple of physician's reports. Moreover, the reports the ALJ mentioned were a couple from Ms. Kerlin's visits to her doctor when she said she was sleeping well. He seemingly ignored the other where she wasn't. That's a significant issue as well. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)(ALJ may not

---

[3] It's also common sense that regularly taking a nap at 6 p.m. as Ms. Kerlin says she does may well will disturb just about anyone's sleep patterns whether they have an impairment or not.

[4] In *Schomas*, the court actually affirmed the district court's decision upholding the ALJ's denial of benefits because the plaintiff had failed to adequately develop his arguments before the district court and the Seventh Circuit deemed them waived. 732 F.3d at 708.

7

"cherry-pick" medical evidence that supports his conclusion and ignore that which doesn't); *Myles*, 582 F.3d at 678.

Accordingly, this case must be remanded, and we thus need not consider the balance of Ms. Kerlin's arguments for overturning the ALJ's decision. But a few points are worth noting. Ms. Kerlin takes the ALJ to task for failing to discuss the symptoms of her panic attacks in his determination of her RFC. As noted above, the ALJ determined that Ms. Kerlin's panic disorder was, indeed, a severe impairment supported by the medical evidence. (R. 20). Contrary to Ms. Kerlin's argument, the Commissioner points out that the ALJ did at least advert to her allegations of panic attacks, albeit briefly:

> The claimant reports suffering from anxiety and having anxiety and panic attacks. However, there is evidence to suggest she engages in more activity than she alleges such as numerous reports that she walks the family dog around the block.

(R. 29). But walking the family dog and suffering from panic attacks are not mutually exclusive, so the Commissioner's point is not well-taken. The Commissioner adds that the ALJ also noted that Ms. Kerlin "attends parties" and takes public transit, which the ALJ felt was unusual for someone alleging panic attacks. (R. 31). But the record does not suggest that Ms. Kerlin "attends parties." She attended *a* party for her sister's god-daughter's birthday. As such she was around familiar family members – she lives with her sister and her children – so it would not be a panic-inducing situation. (R. 24 ("... she has a good relationship with her sister and a very good relationship with her niece and nephew . . . ."). And, it was an isolated incident. Similarly, there is no indication how often she used public transportation. The only mention of it was in connection with her getting to her consultative psychological exam. (R. 24, 366). She had to attend that exam and, without a car (R. 24, 366), she did not have many options.

8

The Seventh Circuit has repeatedly cautioned ALJs against putting too much stock in limited and sporadic activities. *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014); *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004). Ordinarily, those wood-sheddings are in connection with an ALJ equating these limited activities to a capacity for full-time work. The ALJ didn't do that here, but his reliance on walking a dog, going to one family birthday party, and taking the El to a an examination that was part of the process of applying for benefits, seems just as questionable.

Ms. Kerlin also complains that the ALJ should have addressed her Global Assessment of Functioning score of 45, assigned by her treating psychiatrist, Dr. Ross. That's a fairly low mark, indicative of "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." http://www.gafscore.com/. A GAF score that low "does not represent functioning within normal limits. Nor does it support a conclusion that [Ms. Kerlin] was capable of sustaining work." *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010). Yet, the ALJ made no mention of it in his decision.

It is true, as the Commissioner says, that the Seventh Circuit has stated that a low GAF score alone is not enough to overturn an ALJ's finding of no disability but, in the same breath, the court has also indicated that an ALJ cannot simply ignore a GAF score that runs counter to his conclusion. *Bates v. Colvin*, 736 F.3d 193, 1099 n.3 (7th Cir. 2013); *see also Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014)(ALJ's ignoring of low GAF scores demonstrated "a larger general tendency to ignore or discount favorable to [plaintiff's] claim."). The low GAF score in this case came from Ms. Kerlin's treating psychiatrist. The ALJ was free to discount it and explain why – say, because it was out of line with Dr. Ross's recorded observations (R. 360) – but he could not simply ignore it.

9

Ms. Kerlin adds a number of criticisms regarding the ALJ's RFC finding, but we need not specifically address those here. We point out that while the ALJ finds that Ms. Kerlin's obesity is a severe impairment (R. 20), he does not discuss how it impacts her ability to work. This is another pet peeve of the Seventh Circuit, and the ALJ's failure to go into it would likely not withstand scrutiny if we were to ignore it here. *See Browning v. Colvin*, 766 F.3d 702, 706-07 (7th Cir. 2014); *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014); *Martinez v. Astue*, 630 F.3d 693, 698 (7th Cir. 2011).

Additionally, although we understand that the VE testified that Ms. Kerlin's catalog of limitations allowed her to return to her past relevant work as a house cleaner, and that testimony was based on the Dictionary of Occupational Titles, intuitively, it would seem that a woman who can lift and carry no more than ten pounds, could only occasionally stoop, kneel, crouch, crawl, or climb stairs, and must avoid concentrated exposure to fumes, odors, gases, and dust would have difficulty getting hired to clean houses and hold down that job. *Cf. Browning v. Colvin*, 766 F.3d 702, 708-09 (7th Cir. 2014)(discussing problems with vocational evidence). It also seems questionable that an obese woman with a bad knee would be able to hold down a job that requires her to be on her feet most of the day and stoop, kneel, and crouch for one-third of each day. Of course, all this is not to say that Ms. Kerlin is unable to do any level of work. Nor is it to say that, with a better explanation of his reasoning, the ALJ's conclusion that she can clean houses still could not be upheld. It is simply to say that this case must be remanded because the ALJ did not provide a logical bridge from the evidence to his conclusions.

## CONCLUSION

The plaintiff's motion for remand [Dkt. #18] is GRANTED, and the Commissioner's motion for summary judgment [Dkt. #22] is DENIED.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

DATE: 1/5/15